Good morning, your honors. My name is David Brower. I represent the petitioner, the lead plaintiff, Roberto Cohen, in the action below. Today, we petitioned for Arrhythmandamus to overturn the district court's decision appointing class counsel of its own choosing. To quote Judge Kuczynski from the Kavanaugh decision, the lead counsel selection process is not a beauty contest. The district court has no authority to select for the class what it considers to be the best lawyer or the lawyer offering the best possible schedule. Indeed, the district court does not select class counsel. That choice belongs to the lead plaintiff. What occurred here is quite simple. After extensive briefing by several groups of parties attempting to become appointed lead plaintiffs, the court appointed Mr. Cohen, among others, the lead plaintiff. Mr. Cohen then asked for his counsel to be appointed lead counsel. The court decided expressly in the opinion, based upon a comparative review of the resumes of the other winning and losing lead plaintiffs' proposed counsel, to choose the Girard-Gibb firm as lead counsel because, in the Court's words, it believed they would be the best counsel in the case. That is the way I sense, just for your use, that we're all kind of quiet, which is a hint that you may really want to save some time for rebuttal on the case. Okay. What I did want to point out is just one point. I don't mean to cut you off at all. Okay. Let me point out two issues that aren't in the brief. I understand, Your Honor. Number one, mandamus is appropriate here for – is clearly appropriate here. And while the New Mexico case is not precedential, it's certainly persuasive, given that it was Judge Wallace who was the judge in the New Mexico institution case that we cite in the brief, which was unreported. It was Judge Wallace who wrote the mandamus section of Kavanaugh finding that the denial of the right to select counsel by the lead plaintiff was a sufficient harm to justify mandamus, and, of course, it was Judge Wallace who wrote Bauman, the standard for mandamus in the circuit. Secondly, this case is actually worse than Kavanaugh. In Kavanaugh, the district court made the mistake of refusing to appoint the lead plaintiff based on the lead plaintiff's selection of a lawyer that the judge thought there was a better lawyer for, and he selected the lead plaintiff who selected the better lawyer that the court liked better, and that was reversed. Here, the judge below disconnected the relationship between the lead plaintiff and the lawyer. So now you have a lead plaintiff who has no relationship with the lawyer, doesn't want the lawyer, and can't direct or control the litigation through the lawyer because they have no attorney-client relationship. Am I remembering right that Cohen picked a lawyer that the judge really didn't know from securities litigation, so the judge picked the Milberg firm, the Milberg Weiss firm? Well, what happened is what the judge did is there were a group of resumes submitted. There were seven groups. There were probably, I think, 14 different law firms in the seven groups. The judge went through the resumes after selecting the lead plaintiff and said, based on the resumes, saying he reviewed the resumes, based on the resumes, I've concluded these two firms are the most qualified firms to run this case. So they were the most experienced. Well, you would be surprised, Your Honor, but there is something missing from the Milberg Weiss resume that wasn't in front of Judge Ware. They left that out? They left that out. They left a couple of things out, but, you know, they left that out. In addition, he selected Gerard Gibb, whose clients were found inadequate, which is my last point before I sit down, because I do want to save some time. Here, unlike Kavanaugh, in the correct thing that the judge did, the law, when he found that Mr. Cohen had the largest financial interest and when he found that he met the adequacy requirement to be the lead plaintiff, the judge said, and I quote, as to whether a prospective lead plaintiff will adequately represent the class, the court considers two questions. Do the named plaintiffs and their counsel have any conflict of interest with other class members? And two, will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? Citing the handling case from this circuit, which, incidentally, this format, this formulation is identical to Amkin Products v. Windsor, the Supreme Court's decision, which you can find. He then finds that, indeed, Mr. Cohen meets that standard. By virtue of doing that, there was nothing left for the judge to do with respect to the selection of counsel other than approve Mr. Cohen's selection, because Mr. Cohen's counsel, based on their resume, was facially experienced and competent counsel. They were not, as the Kavanaugh court explained, family members of Mr. Cohen, no such allegation. They were not just out of law school. They were not solo practitioners. They're firms that are as a firm that is routinely appointed lead plaintiff by courts throughout the country, including several, as their resume points out, solo districts in New York. Roberts. Some practitioners are actually pretty competent. Thank you. Your Honor, I would like to reserve the rest of my time. Roberts. Thank you, counsel. Smith. Good morning. May it please the Court. My name is Lee Smith. I'm with the Milberg LLP Law Firm. Counsel, you must have picked up from what I raised with your adversary that my focus here is Kavanaugh. I just don't get it. Kavanaugh says the judge doesn't get to pick the lawyer. The plaintiff gets to pick the lawyer. The judge can disapprove the plaintiff's selection, and that's all. And it looks to me as though the judge just acted squarely contrary to that rule of law. Tell me how to get around Kavanaugh. Your Honor, I think there's a bit of a misunderstanding here. Our firm represents the New Jersey Carpenters Pension and Annuity Funds. They were appointed co-lead plaintiffs with Mr. Cohen, who's the Petitioner. Our firm was appointed co-lead counsel. The dispute here is really the same. Are you saying you don't represent Cohen, the lead plaintiff? You just represent the union? That's correct. We represent the Pension and Annuity Funds. We're co-lead counsel. And I intend for my remarks to be brief. So you don't claim to be lead counsel at all? No, Your Honor. We're co-lead counsel. Now, did Cohen get the lawyer of his choice as your co-lead counsel? No. No, Your Honor, he did not. We are not taking that position. I'm sorry? And so you have no objection to a mandamus to tell the judge you've got to appoint you've got to let Cohen make another choice? No, Your Honor, that's correct. We take no position on the mandamus, but we did want to state for the record that we believe our clients were appropriately appointed lead plaintiffs, that we were appropriately appointed lead counsel, and that it's this Court's role to provide guidance to the district court. How many lead plaintiffs can a judge pick? Your Honor, I don't know if there's a limit to that. It is certainly appropriate. What does the statute say? I'm not sure of the terms of the statute. It's not unusual. The statute says one. It's singular. So if we mandamus the judge below, what you're worried about is we're going to say you stick to the letter of the law because then you're out. No, Your Honor, that's not. Isn't that basically it? Isn't that basically it? Well, we do believe that we were appropriately appointed lead plaintiff. There have been a number of situations where there are multiple lead plaintiffs. I've worked on many cases. And we believe that's appropriate under the statute. That's because nobody's complained about it before, except, in fact, the only person complaining about it is me. But the statute says one. Your Honor, if that's the case, then it's up to the district court to reevaluate who is the most appropriate lead plaintiff and then to consider the question of lead counsel. Okay. All right. Fine. Thank you. Why would it be up to them to reevaluate? Why wouldn't it just be? Why wouldn't it be called? Well, the evaluation's done. That's that. And now we let that plaintiff appoint lead counsel. Well, there are currently three plaintiffs, R2 Client and Mr. Cohen. Yeah, but Cohen had the biggest financial interest. That's the finding, right? No, that's not entirely accurate. The district court made findings with respect to the losses and determined that actually the DePease group had a large loss, but it's a group and it's my understanding that's why the district court did not appoint the DePease group as lead plaintiff. We also had a significant loss that was close in amount to that of the DePease group, and Mr. Cohen had a loss that was calculated using another methodology. And I'm not sure how the apples and oranges compare in this case. No.  Thank you, counsel. Here's the man whose feet we're really fighting about. I think that I'm the one who is probably going to be the object of the toughest questions. I watched with some trepidation after a morning of hard questioning by Judge Kleinfeld that he smiled at my colleague to the left. This is really a dispute between my clients, Lisa Miller and the DePease group, and Mr. Cohen, and I'd like to address some of the issues that were raised by my colleague in the petition. The Private Securities Litigation Reform Act is a short statute, but in its brevity, there are some major points on which we have fundamental disagreement. We believe that the words in the statute subject to the approval of the court in relation to the selection of counsel mean something and cannot be simply read out of the statute. Doesn't it mean that the judge can say, no, that's not an appropriate lead counsel? That's right. Go get another one. That the judge can approve or disapprove. All right. So he disapproves and says, go get another one. Well, Congress spoke on what the words mean, Your Honor, when it said in its conference committee report that it did not intend to disturb the trial court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class. You know, the Senate gets to disapprove a President's nomination for judgeship, but the Senate doesn't get to pick a new nominee. Why isn't that the exact analogy? That is a good analogy. Now, let's just develop it a point to a stage, though. The different members of the class who come forward to ask to be lead plaintiff are like the administration putting forward a number of candidates. This isn't a case where the trial judge went out and just willy-nilly picked whom he thought was the best qualified counsel. You changed the analogy. The President doesn't send a bunch of nominees to the Senate and say, which would you like, look over their resumes. That's right. He nominates one, and the Senate can say yes or no, but it can't pick another one. It's done one at a time. And if the Senate rejects one, he can pick another. And I thought this statute created the same scheme and that that's what Kavanaugh says. There's a slight difference in the analogy. In this case, the plaintiff class puts forward seven different nominees. The judge ---- The plaintiff class is not the lead plaintiff. The lead plaintiff is the one to put forth someone. Not the plaintiff class. The members of the class who wanted to be lead plaintiff. I get what you're doing. You're mixing up two questions, the selection of the lead plaintiff and the selection by the lead plaintiff of lead counsel. And you're having us look at the second as though it was the first. The way it works is there is a beauty contest to pick lead counsel, and basically it's a matter of money under the new statute. And then, once you've got lead counsel, no more beauty contests, no more judicial selection. Instead, lead plaintiff. I misspoke. Thanks. The lead plaintiff picks his lawyer, and all the judge gets to say is yes or no, if I understand Kavanaugh and the statute right. And I don't see a way around that. So tell me if there is one. Because that's not what the statute says. I've got it right here. Tell me which one to look at. The statute says, subject to the approval of the court, the lead plaintiff selects and retains counsel. That's the part I had highlighted and circled. Right. Then, if there are other candidates before him, the court has the discretion, as Congress explained in the conference committee report. What section are we looking at now? I was looking at Little Roman numeral V, and you now want me to look at a different section. No. No. I was referring to the conference committee report now that elucidates what Little Roman numeral V means. And what you quoted from that is that means the judge gets to approve or disapprove lead counsel. Right. Which is just what the statute says. And we believe that the full quote, Your Honor, is that Congress in passing this Act did not intend to disturb the trial court's discretion under existing law. Now, that discretion to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class. Is there something different in what you read from the committee report and what the plaintiff's selection of the class lawyer? There's no difference. There's just a fuller explanation referencing the traditional discretion of trial courts. How does the explanation lead to the conclusion that the judge is entitled to look at resumes and pick who shall be counsel as opposed to the lead plaintiff? The explanation justifies that because it says that it's the trial court's job to do what's necessary to protect the interests of the plaintiff class. Now, this is not a case like Kavanaugh where the district court came up with its own structure for picking lead plaintiff, and part of that structure was what kind of deal does the lead plaintiff have with his nominated counsel. There was no such independent movement by the trial judge in our case. He followed what he thought was the right set of guidelines for picking lead plaintiff. But then he took the next step and approved or disapproved the lead plaintiff's choice in the way that he thought best protected the interests of the plaintiff's class. That's not what the statute says. The statute is very clear. It's the lead plaintiff's choice, not the judge's choice. Well, turning back to Kavanaugh, then, which raises up to the question of whether  of the plaintiff's class. The reading of the statute says, yes, it's a black and white. But I think that the statute doesn't. Is it in simple English language? I mean, it's not something that's really arcane? Words such as subject to the approval of the court are words that require some explication. Judge Kaczynski said in dramatic language that they don't. But let me ask you about something else that relates to this, that the Pease Group filed something saying that we should appoint them lead counsel. Lead plaintiff. Lead plaintiff, I mean. And I don't understand that. They didn't file a petition for a writ of mandamus. So it seems like whose lead plaintiff isn't before us. That brings us to our second argument. Our view is that the order is justifiable, is not clear error, and should be upheld. But we recognize that this panel may reach a contrary decision. Well, I don't know if we even reach a decision at all. In order to have us decide whether a petition for a writ of mandamus should be granted, the party has to file a petition for a writ of mandamus. Yes. And a petition was filed in this case. But not by DePease. That's correct. It was filed by DePease. Somebody else wanted something different from what DePease wanted. Well, once a writ is filed and once a writ is before the court, it evokes the court's wide equitable power under 28-1651. Do you have a case where we held or some other circuit held that we could do that, that we could grant mandamus in favor of a party who had not filed the petition for a writ of mandamus? We haven't. We are not asking you to grant mandamus in our favor. We're saying this. Number one, we don't think this is writable. This isn't clear error. But number two, alternatively, if the court feels that this is writable and determines to remand this back to the district court to correct, then you have to remand the whole procedure. Why? Both the selection of plaintiff and the lead plaintiff and the selection. Why? No one petitioned us for a writ of mandamus to set aside the choice of lead plaintiff. So why do we have to? The application for a writ of mandamus evokes the equitable power of the court. The trial court is trying to manage this class action. It's making a complicated decision. Remember, in this case, as my colleague told you, it's not just a matter of Mr. Cohen versus the Tappis group. There are two lead plaintiffs chosen. The judge picked an individual lead plaintiff and an institutional lead plaintiff. Then of those two, for those two lead plaintiffs, he selected one of their choices for counsel. And he selected somebody else. Right. So he was co-joining, to use your reference in one of the immigration cases today, he was co-joining these two issues. If he is going to be told you have to go back to the drawing board on the selection of counsel, I think that both logic and fairness dictate he should reconsider both, because he may have decided in the record before him that it made sense to have Mr. Cohen as a lead plaintiff only if they also had Gerard Gibbs as lead counsel, because Gerard Gibbs, you'll recall, is the firm that investigated this case and drafted the complaint. But Gerard Gibbs is not his counsel and he is the lead plaintiff. I'm sorry. Did you say something, Betty? No, I didn't say a word. Oh, okay. Because it sounds like there's noises coming out of that electronic box. We got a lot of sound out of your television. Does it mean that I'm not thinking? All right. I'm going to answer the question. Your time's up, but you're free to answer the question. I think the question was, went to the subject of what the Court should do if there was a remand. And my point is that the District Court made two selections that I believe are mutually dependent. So if there is to be a remand here, Merritt, I think he should be given guidance on making selections, reviewing both selections, both in terms of lead  Thank you, counsel. I don't have a little time left. Let me start with if what my learned colleague just said is true, then, indeed, Judge Ware erred but good. Because the statute and Kavanaugh are very clear that it is a sequential approach to the PSLR lead plaintiff appointment process whereby the Court starts with which plaintiff has the largest financial stake in the litigation. In Kavanaugh, what they use as a synonym for that is what plaintiff has the largest loss among those seeking to be appointed lead plaintiff. There was no dispute below, and you have the briefs and you have the calculations, there was no dispute below that Mr. Cone, far and away, had the largest financial loss based on a first-in, first-out accounting analysis. The Court was then supposed to move on to whether or not there was anything that could rebut the presumption as to him. What the Court then did is it swept in an analysis of a different accounting method. The Dupree's group, which was represented by Gerard Gibbs, who was the party in interest in this, opposing this mandamus petition, it's not Ms. Smith, who didn't seek to be a lead plaintiff. She filed the complaint, but she never sought to be appointed lead plaintiff, who he's representing, and Lisa Miller, I'm sorry, and the Dupree's group was thrown out because the Court found it to be a cobbled-together, unrelated group where they had no, not just because it was unrelated, but it was unrelated, had no pre-litigation relationship and no mechanism for controlling and directing the litigation. And it was all of those reasons put together that the Court gave for throwing out the Dupree's group, which had more net shares than the New Jersey pension funds that were represented by Milberg Weiss. So what happened was he said, well, they have more net shares, and this one has a larger loss, and he appointed both. Mr. Cohn with the largest loss, Milberg Weiss with the largest net shares, whatever that means. Now, the fact of the matter is, if you go back to this learned judge's class certification decisions, you'll find in the Cisco case what he did was assume, as was the law of the circuit at the time, that the loss in a securities case is calculated at the point of purchase. The problem with that is that the Ninth Circuit law, and that was overturned by the Supreme Court in Dura Pharmaceutical, and that the idea of net losses no longer has any rational relationship to a loss. So we picked Mr. Cohn, who was indisputable the one who had the largest loss based on out-of-pocket loss, the way we would all think about calculating a loss in a stock. How much did you pay? How much did you have at the end? How much was the difference between what you paid and what you had at the end? And then he added up all the shares and calculated, well, they have a lot of shares at the end, so they must have a big loss, too. And that's how he came up with the two lead plaintiffs. If he's right, that there was this sort of interconnected thing with the decisive point being to get Gerard Gibb to be holy counsel at the end of the process, well, that was clearly error under the PSLRA. And you don't think he did that. What he did was decided he'll pick the best lawyer who he likes and who he thinks is the best lawyer. So at the end, he did not what the statute provides, which is after you've picked the lead plaintiff. Instantly, is it clear under the statute that there can be more than one lead plaintiff? It is not clear under the statute whether there can be more than one lead plaintiff. Do you have the words handy? I don't happen to have the words handy for that subject. It says it shall appoint the person or group of persons to serve as lead plaintiff. As lead plaintiff. As lead plaintiff. The phrase lead plaintiff. Singular. I'm sorry. Singular. Singular. It's singular. The phrase lead plaintiff is singular. The law is very clearly developed. By the way, the Gerard Gibb firm, the DePris group, cites the Vassada case all over their brief. Judge Elston in the Vassada case is exactly right. She does a terrific analysis in that case, very lengthy, collects a lot of cases to discuss what is an appropriate group, as that word is used, in the context of the PSLRA. The dispute about lead plaintiff is whether it's who has the biggest loss based on stocks they purchased and stocks they sold, versus who has the biggest loss in the way of paper losses, stocks that they bought that have gone down but they still hold them. Is that right? The difference was number of shares. The net loss calculation that the Court used to appoint the Milberg Weiss client as lead plaintiff, basically. If you buy 200 shares at 10 and they go to 5 and you sell them. Irrelevant to price. No calculation of price. If you bought 1,000 shares during the class period and you sold 900 during the class period, if you have 100 left and Judge Duffy did the same thing, but he had 200 shares left at the end, Judge Duffy would be appointed the lead plaintiff under the calculus that the district court used with respect to net shares. It doesn't do any calculation of dollar value. You won't find the dollar value of the net share of supposed financial interest anywhere in the Court's opinion because it can't be done. It doesn't exist. And, of course, it can be irrational. With all due respect to the judge, it's not a rational way of reaching a number because you can buy all the shares on the last day of the class period after the stock has taken a long ride down and you have a lot of shares with a $1 loss on them while the people who bought at the beginning of the class period when the stock was And at the end of the class period, you can show as a result of the fraud, you lost $20 on those. The Supreme Court has spoken on this, right? And what did they say about it? Well, the Supreme Court says you measure the amount at the drop. What is the drop at the end of the class period unless there are partial disclosures, in which case you count the partial disclosures. So there is no immediate logic anymore that the most shares you buy will automatically translate to the most artificial inflation. And, frankly, the judge got that reasoning out of a 1999 case. The person – the problem with the person who buys a whole lot of shares at the end of the class period is it could be a collusive way of varying the class action. One of the cheats buys all the shares when they've gone down to a dollar a share from $100 a share and then says, I'm the biggest shareholder. I'm the biggest shareholder. They didn't lose anything. Right. But I want to know, what does the Supreme Court say about that? Well, the Supreme – what the Supreme Court said, what I was trying to explain was before, judge – the judge below, Judge Ward, relied on the Network Associates case to find this methodology. And that case is a 1999 case. And that case was decided when the law of this circuit was what was the Durer Ninth Circuit decision. And subsequently, Durer was overturned by the Supreme Court, and it became the Durer loss causation case. And what it holds is you measure the loss by the drop. What is your out-of-pocket loss? The Supreme Court said, what is your out-of-pocket loss? That's how we measure your loss causation. And we measure it tied to the things that caused you to be defrauded, and therefore you have a compensable loss with respect to recovery of that amount. That has nothing to do with a net shares allocation, which is not going to get you what the Kavanaugh court calls a loss. It could. If I buy 100 shares at the beginning of the class period at $100 a share and I sell at the end of the class period at $1 a share, I have a realized loss. If Judge Duffy bought 100 shares at the beginning of the class period and he's still holding them at the end of the class period when they're worth $1 a share, he has an unrealized loss. But we both suffered just as much. You both suffered just as much of a loss on that analogy. Absolutely. And the statute deals with holders versus sellers. There's a look-back provision under the PSLRA that they look back to the running 90-day average price. If you don't sell and that's your settle-out price, those were the numbers that were used by the parties. Everybody agreed on what the settle-out 90-day number was. That's rarely a dispute. The problem becomes when you assume that's going to result in the largest loss when you're comparing losses, which is the first thing you must do when choosing a lead plaintiff. When they compared losses, out-of-pocket losses, using the FIFO accounting method of accounting It has to be out-of-pocket, so the right way to do it is that I have a big loss and Judge Duffy has no loss? No, no, no. Judge Duffy's lost because he held. He will be given a settle-out number at the end. So let's say it drops to He has no out-of-pocket loss because he didn't sell. But he's entitled to recover because he overpaid for the shares. And when it dropped, he could not recover that. And he can't recover it. The statute assumes if the stock stays down for 90 days, and the way it does is it averages the 90 days, at the end of the 90 days, if Judge Duffy continued to hold for the 90 days and didn't sell within it, if he sold within it, that's his price. If he held to the end of the 90 days, that's his number. They will take that number, compare it to your purchase price, and that's your out-of-pocket loss. And you may have close to the same amount, or it may vary depending on if the stock kept going down, it might increase the loss. If you look at the chart, there was no dispute below. Mr. Cohn had by far, by over $40,000, the largest financial loss based on a FIFO, and everyone compared it in their charts. That can't be in dispute. So if there were to be a single lead plaintiff, as the statute uses the phrase, Mr. Cohn was clearly the proper lead plaintiff, and the only one that the judge bothered to put a dollar loss amount in the opinion. With respect to the comment about – I don't think I really have to belabor it – but with respect to the conference committee comment, if the Court looks at the Third Circuit's sentence decision, which was relied heavily on by the Kavanaugh court, it will find it discusses that language, and it finds that supports the position that the lead plaintiff chooses the counsel because it's only if the interests of the class are in jeopardy that the Court should intervene in that choice. Thank you, Your Honor. If you have no further questions. Your Honor. Roberts. Okay. Thank you, counsel. Thank you. Cohn v. United States District Court is submitted and adjourned for the day.
judges: Fletcher B. , Kleinfeld, Duffy